IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION



09/04/2024

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **DONALD R. TRIPLETT, JR.** | § | Case No. 19-42570 |
| xxx-xx-8753 | § | |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| KEITH BLACK | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 20-04057 |
| | § | |
| DONALD R. TRIPLETT, JR. | § | |
| | § | |
| Defendant | § | |

| | | |
|---|---|---|
| JEREMY HALTOM | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 20-04059 |
| | § | |
| DONALD R. TRIPLETT, JR. | § | |
| | § | |
| Defendant | § | |

## <u>OMNIBUS FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

The Court issues these omnibus findings of fact and law after conducting a joint

trial in the above adversary proceedings of the following:

A.   "First Amended Complaint Objecting to Discharge" filed by Plaintiff, Keith Black;[1] and

B.   "First Amended Complaint Objecting to Discharge" filed by Plaintiff, Jeremy Haltom.[2]

These are referred to collectively as the "Trial Complaints."  Plaintiffs' Trial Complaints allege grounds exists to deny Defendant, Donald R. Triplett, Jr.,[3] a discharge pursuant to 11 U.S.C § 727(a)(6)(A), § 727(a)(4), and § 727(a)(3).  Defendant denies Plaintiffs' allegations.  Both parties appeared through counsel at the joint trial.

These findings dispose of all remaining issues pending before the Court in the above adversaries regarding Defendant's entitlement to a discharge pursuant to 11 U.S.C § 727.  These findings also dispose of all issues pending before the Court in the above adversaries contained in multiple motions filed by all parties as follows:

A.   "Motion for Sanctions" filed by Defendant against Plaintiff, Keith Black;[4]

B.   "Motion To Strike and For Sanctions Under Bankruptcy Rule 9011" filed by Plaintiff, Keith Black;[5]

C.   "Motion for Sanctions" filed by Defendant against Plaintiff, Jeremy Haltom;[6] and

---

[1] *Black*, Adv. No. 20-4057, ECF No. 145.

[2] *Haltom*, Adv. No. 20-4059, ECF No. 147.

[3] Defendant, Donald R. Triplett, Jr., is at times referred to herein as the Debtor.

[4] *Black*, Adv. No. 20-4057, ECF No. 141.

[5] *Black*, Adv. No. 20-4057, ECF No. 189.

[6] *Haltom*, Adv. No. 20-4059, ECF No. 143.

2

       D.     "Motion To Strike and For Sanctions Under Bankruptcy Rule 9011"
filed by Plaintiff, Jeremy Haltom.[7]

These are referred to collectively as the "Sanctions Motions."  Though the Sanctions

Motions were not heard at trial, Defendant repeatedly attempted to raise the issues they

present despite the Court's clearly stated parameters.[8]  Because the Court finds Defendant

is entitled to a discharge pursuant to 11 U.S.C § 727, the Sanctions Motions are now

moot.

## FINDINGS OF FACT[9]

## I.  Previously Established Facts

Certain facts were previously established in these adversary proceedings as set

forth in the Court's prior "Omnibus Order Denying Plaintiffs' Motions for Summary

Judgment But Establishing Certain Material Facts"[10] under the guidelines of Local

District Court Rule CV-56, as incorporated by Local Rule of Bankruptcy Procedure

---

[7] *Haltom*, Adv. No. 20-4059, ECF No. 190.

[8] The scope of the joint trial was to hear and determine the Trial Complaints only, not the Sanctions Motions.  As explained on the record to the parties, this was to prevent distraction from and obfuscation by the parties of their respective evidentiary presentations on the merits of the Trial Complaints.

[9] Unless indicated specifically otherwise, all findings of fact are applicable to and made in both above styled adversary proceedings.

[10] *Black*, Adv. No. 20-4057, ECF No. 206; *Haltom*, Adv. No. 20-4059, ECF No. 207.

7056(d).[11] Incorporated as part of these omnibus findings, the previously established

facts are as follows:

*Underlying Bankruptcy Case*

1.      The Court takes judicial notice of the docket in the underlying bankruptcy case.[12]


2.      Debtor filed a voluntary petition for Chapter 7 relief on September 19, 2019.[13]


3.      Debtor filed the petition without Schedules, Statements, and other required
        documents.[14]


4.      Mark A. Weisbart (the "Trustee") was assigned as the Chapter 7 Trustee on
        September 20, 2019.[15]

---

[11] Local District Court Rule CV-56 directs a movant to include a Statement of Undisputed Material Facts
and to support such a statement with "appropriate citations to proper summary judgment evidence."  It
directs a respondent to ensure that any response "should be supported by appropriate citations to proper
summary judgment evidence."  The rule states:

> (c) **Ruling**.  In resolving the motion for summary judgment, the court will assume that the facts as
> claimed and supported by admissible evidence by the moving party are admitted to exist without
> controversy, except to the extent that such facts are controverted in the response filed in
> opposition to the motion, as supported by proper summary judgment evidence.  The court will not
> scour the record in an attempt to unearth an undesignated genuine issue of material fact.

Thus, any failure by a respondent to controvert the material facts set forth in any of the motions or to
support such a challenge by references to proper summary judgment evidence, results in the facts as
claimed and supported by admissible evidence by the movant "admitted to exist without controversy."
E.D. TEX. LOCAL R. CV–56(c).

[12] *In re Triplett*, No. 19-42570.

[13] *In re Triplett*, No. 19-42570, ECF No. 1.

[14] *Id*.

[15] *In re Triplett*, No. 19-42570, ECF No. 4.

4

5.       Debtor filed his Original Schedules,[16] Chapter 7 Statement of Current Monthly
         Income Form 122A-1,[17] and Statement of Financial Affairs ("SOFA") on October
         15, 2019.[18]

6.       In his Schedules, Debtor valued his home at $210,000.00.[19]  He reported less than
         $50.00 in several checking accounts, and no interest in any retirement or
         investment accounts as of his petition date.[20]

7.       On his SOFA, Debtor identified a number of litigation proceedings to which he
         was a party in the year preceding his bankruptcy.[21]  This litigation included
         several lawsuits by and against the Debtor, Ron Valk, Shawn Valk, and the Valks'
         business, Platinum Construction.  The list of legal proceedings also included
         lawsuits brought by the Plaintiffs, Jeremy Haltom and Keith Black, against the
         Debtor.[22]

8.       These legal proceedings include the following:

    a.   *Black v. DFW Design & Remodeling, LLC, et. al*., No. DC-18-14952, 162nd
         Civil District Court, Dallas County.

    b.   *Haltom v. DFW Design & Remodeling, LLC, et. al.*, No. DC-17-16085, 298th
         Civil District Court, Dallas County.

    c.   *Haltom v. DFW Design & Remodeling, LLC, et. al.*, No.18-01418, 68 Civil
         District Court, Dallas County.

---

[16] *In re Triplett*, No. 19-42570, ECF No. 27.

[17] *In re Triplett*, No. 19-42570, ECF No. 28.

[18] *In re Triplett*, No. 19-42570, ECF No. 29.

[19] *In re Triplett*, No. 19-42570, 1, ECF No. 27.

[20] *Id.* at 3-4.

[21] *In re Triplett*, No. 19-42570, 3-7, ECF No. 32.

[22] *Id*.

d. *Valk v. Triplett, et. al.*, No. 1-18-0257, 382nd Judicial District Court, Rockwall County.

e. *Valk v. Triplett, et. al.*, No. 1-18-0096, 439th Judicial District Court, Rockwall County.

f. *Valk, et. al.  v. Triplett*, No. 3:18-cv-01443-G, United States District Court for the Northern District of Texas.

g. *Triplett v. Valk, et. al.*, No. DC-18-05263, 162nd Civil District Court, Dallas County.

9. On Schedule C, Debtor claimed his home and various household items as exempt from creditors.[23]

10. On Schedule A/B, Debtor stated that Ron Valk owed him an unknown amount of money.[24]

11. Debtor filed an Amended SOFA and Amended Schedule A/B on October 17, 2019.[25]

12. The Trustee held the § 341 creditors meeting on November 13, 2019.[26]

13. Former Plaintiffs, Shawn Valk and Ron Valk (the "Valks"), filed a "Motion for Examination Under Rule 2004" (the "2004 Motion") on November 18, 2019.[27] On December 13, 2019, Jeremy Haltom and Keith Black both respectively filed a

---

[23] *In re Triplett*, No. 19-42570, 9-10, ECF No. 27.

[24] *Id*. at 5.

[25] *In re Triplett*, No. 19-42570, ECF Nos, 32, 33.

[26] *In re Triplett*, No. 19-42570.

[27] *In re Triplett*, No. 19-42570, ECF No. 50.

"Joinder in Creditor Shawn Valk and Ron Valk's Motion for Examination Under Bankruptcy Rule 2004."[28]

14.     The Valks filed a "Motion to Extend Deadline for Filings Complaints under 11 U.S.C. §§ 523 and 727" on December 13, 2019,[29] which Mr. Haltom and Mr. Black joined on December 16, 2019.[30]  Debtor objected on December 27, 2019.[31] The Court granted the motion on January 31, 2020.[32]

15.     The Court granted the 2004 Motion filed by the Valks, and joined by Mr. Haltom and Mr. Black, on February 3, 2020.[33]  The Court ordered Debtor to "submit to a ten (10) hour examination that may be split into two different days (the "Examination"), to be taken by the Plaintiffs.[34]

16.     Plaintiff, Shawn Valk, filed a "Complaint for Declaratory Relief and to Determine the Allocation and Distribution of Funds Upon Winding Up of TV Arrowhead, LLC" on February 25, 2020.[35]  Plaintiffs, Ron Valk, Jeremy Haltom, and Keith Black, were not named parties in this proceeding.

17.     Plaintiffs filed a "Second Motion to Extend Time to File Complaint to Determine Dischargeability" on February 28, 2020.[36]  The Court granted the motion on March 16, 2020.[37]

---

[28] *In re Triplett*, No. 19-42570, ECF Nos. 63, 64.

[29] *In re Triplett*, No. 19-42570, ECF No. 62.

[30] *In re Triplett*, No. 19-42570, ECF Nos. 69, 73.

[31] *In re Triplett*, No. 19-42570, ECF No. 72.

[32] *In re Triplett*, No. 19-42570, ECF No. 97.

[33] *In re Triplett*, No. 19-42570, ECF No. 99.

[34] *Id*. at 2, ¶ 3.

[35] *In re Triplett*, No. 19-42570, ECF No. 103.

[36] *In re Triplett*, No. 19-42570, ECF No. 104.

[37]  *In re Triplett*, No. 19-42570, ECF No. 113.

18.    On May 18, 2020, an attorney for Plaintiffs conducted a 2004 Examination of Debtor.

    a.    When questioned during the 2004 Examination about whether he received any 1099s for 2015, Debtor stated, "I probably got them, but your clients [Plaintiffs] destroyed my documents."[38]

    b.    Debtor also denied being a member, agent, or employee of Copper Creek, which he described as "Doni's Company."[39]

19.    Plaintiffs filed a joint "Motion to Compel Debtor to Complete 2004 Examination" (the "Motion to Compel") on June 2, 2020.[40]  Debtor objected to the Motion to Compel on June 23, 2020.[41]

20.    On July 14, 2020, the Court held a hearing on the Motion to Compel filed jointly by all Plaintiffs, which it then granted on July 21, 2020.[42] The Court ordered Debtor to "re-appear and continue to give testimony and be deposed for no longer than six (6) hours, on the record, by Creditors in connection with Triplett's Rule 2004 examination...If additional time is needed, Triplett shall appear, testify, and be deposed by Creditors in connection with Triplett's Rule 2004 examination for no longer than three (3) hours, on the record . . ."[43]

---

[38] *Black*, Adv. No. 20-4057, 4, Ex. L, ECF No. 170-12; *Valk*, Adv. No. 20-04058, 4, Ex. L, ECF No. 190-12; *Haltom*, Adv. No. 20-4059, 4, Ex. L, ECF No. 172-12.

[39] *Black*, Adv. No. 20-4057, 33, Ex. L, ECF No. 170-12; *Valk*, Adv. No. 20-04058, 33, Ex. L, ECF No. 190-12; *Haltom*, Adv. No. 20-4059, 33, Ex. L, ECF No. 172-12.

[40] *In re Triplett*, No. 19-42570, ECF No. 124.

[41] *In re Triplett*, No. 19-42570, ECF No. 130.

[42] *In re Triplett*, No. 19-42570, ECF No. 152.  This order is later referred to herein as the "Order Granting Creditors' Motion to Compel Debtor to Complete 2004 Examination."  *See* Ex. 20.

[43] *Id*. at 1-2, ¶ 2.

21.    Plaintiffs collectively filed a "Motion to Compel Discovery and Request for Sanctions" (the "Motion to Compel Discovery") on September 29, 2020.[44]  Debtor objected to the Motion to Compel Discovery on October 20, 2020.[45]

22.    On December 3, 2020, Debtor filed a "Motion to Stay Bankruptcy and Adversary Proceedings Pending Resolution of Criminal Proceedings and, Alternative, Motion for Protection."[46]  The Court denied the motion on February 23, 2021.[47]

23.    After a hearing on December 4, 2020, the Court entered an "Order Granting in Part/Denying in Part Creditors' Motion to Compel Discovery and Request for Sanctions."[48]  The Court ordered Debtor to pay Plaintiffs $500.00 for reasonable attorneys' fees, and denied the remainder of the Motion to Compel Discovery.[49]

24.    On August 3, 2021, the Trustee filed a "Motion to Sell Estate Claims,"[50] followed by an "Amended Motion to Sell" filed on August 12, 2021.[51]  In this motion, the Trustee sought permission to sell certain claims owned by Debtor's estate against recipients of allegedly avoidable transfers to the Valks.  These included the following:[52]

    a.  Pending counterclaims and causes of action asserted by Debtor in *Ron Valk v. Jose Doniceth Escoffie et al.*, No. 1-18-0096, pending in the 439th Judicial District Court of Rockwall County, Texas.

---

[44] *In re Triplett*, No. 19-42570, ECF No. 171.

[45] *In re Triplett*, No. 19-42570, ECF No. 174.

[46] *In re Triplett*, No. 19-42570, ECF No. 195.

[47] *In re Triplett*, No. 19-42570, ECF No. 222.

[48] *In re Triplett*, No. 19-42570, ECF No. 196.

[49] *Id*.

[50] *In re Triplett*, No. 19-42570, ECF No. 247.

[51] *In re Triplett*, No. 19-42570, ECF No. 252.

[52] *Id*. at 2, ¶ 4.

b. Pending claims and causes of action asserted by the Debtor, individually, and Debtor's d/b/a DFW Design & Remodeling, LLC in that certain action styled *Donald Triplett et al. v. Shawn Valk et al.*, Cause No. DC-18-05263, pending in the 162nd Judicial District Court of Dallas County, Texas.

c. Pending counterclaims and causes of action asserted by the Debtor, individually, and Debtor's d/b/a DFW Design & Remodeling, LLC in that certain action styled *Mike Anderson v. Don Triplett, et al.*, Cause No. DC 18-01339, pending in the 193rd Judicial District Court of Dallas County, Texas.

d. Potential avoidance actions 11 U.S.C. §§§ 547, 554, and 550, and other claims and causes of action against the Debtor, his non-filing spouse Jose Doniceth Escoffie, and their respective and/or related entities under 11 U.S.C. §§§ 547, 554, and 550.

e. Certain liens recorded by the Debtor, including: (1) Lien Affidavit against Ronald Valk d/b/a Platinum Construction and Platinum Storage Maple LLC in the real property records of Dallas County, Doc. 201700333379, (2) Lien Affidavit against Ronald Valk d/b/a Platinum Construction and Platinum Storage LLC in the real property records of Rockwall County, Doc. 20170000021975, and (3) Lien Affidavit against Ronald Valk d/b/a Platinum Construction and Platinum Storage Maple LLC in the real property records of Dallas County, Doc. 201700333378.

25. Debtor objected to the "Amended Motion to Sell" on August 25, 2021.[53]  On August 30, 2021, the Court approved the Trustee's sale of these claims to Plaintiffs, Shawn Valk d/b/a Platinum Construction, and Ronald Valk d/b/a Platinum Construction.[54]

26. On October 26, 2021, the Trustee filed a Report of Sale of estate claims and rights to Shawn Valk d/b/a/ Platinum Construction and Ronald Valk d/b/a Platinum Construction, for $50,000.00.[55]

---

[53] *In re Triplett*, No. 19-42570, ECF No. 256.

[54] *Id.*

[55] *In re Triplett*, No. 19-42570, ECF No. 271.

27.    The Trustee filed a Final Report on April 28, 2023.[56]

*Adversary Proceedings at Issue*

28.    On December 11, 2020, the Plaintiffs each filed a "Motion to Bifurcate Their Claims Under 11 U.S.C. § 727 From Their Claims Under 11 U.S.C. § 523 and Those Arising Under State Law" in their respective cases.[57]

29.    On January 26, 2021, the Court entered in each adversary proceeding an "Order Granting Plaintiffs' Motion to Bifurcate Claims; Granting in Part and Denying in Part Defendant's Motion to Stay Adversary Proceedings Pending Resolution of Criminal Proceedings; Severing Counts 8-9-10-11 of Complaint into Separate Adversary Proceeding; and Abating New Adversary Proceeding Regarding § 523 Claims."[58]

30.    Plaintiffs each filed a "Motion to Compel Deposition of Jose Doniceth Escoffie" on May 28, 2021, which led to a discovery dispute.[59]  Debtor objected to the motions on June 11, 2021.[60]  After the Court granted the motions in part, Plaintiffs each filed a subpoena on July 2, 2021,[61] followed by a "Motion to Hold Debtor in Contempt for Violating [Order Granting in Part Plaintiff's Motion to Compel Deposition of Jose Doniceth Escoffie]," filed on July 16, 2021.[62]  Debtor objected to these motions, and filed his "Motion to Hold Brandon Tittle, Plaintiffs' Counsel, in Contempt" (the "Debtor's Contempt Motion"), on July 28, 2021.[63]  Plaintiffs objected to Debtor's Contempt Motion on August 10, 2021.[64]  The Court denied both parties' motions on September 27, 2021.

---

[56] *In re Triplett*, No. 19-42570, ECF No. 314.

[57] *Black*, Adv. No. 20-4057, ECF No. 21; *Haltom*, Adv. No. 20-4059, ECF No. 21.

[58] *Black*, Adv. No. 20-4057, ECF No. 28; *Haltom*, Adv. No. 20-4059, ECF No. 28.

[59] *Black*, Adv. No. 20-4057, ECF No. 48; *Haltom*, Adv. No. 20-4059, ECF No. 48.

[60] *Black*, Adv. No. 20-4057, ECF No. 50; *Haltom*, Adv. No. 20-4059, ECF No. 50.

[61] *Black*, Adv. No. 20-4057, ECF No. 57; *Haltom*, Adv. No. 20-4059, ECF No. 57.

[62] *Black*, Adv. No. 20-4057, ECF No. 59; *Haltom*, Adv. No. 20-4059, ECF No. 59.

[63] *Black*, Adv. No. 20-4057, ECF No. 61; *Haltom*, Adv. No. 20-4059, ECF No. 62.

[64] *Black*, Adv. No. 20-4057, ECF No. 62; *Haltom*, Adv. No. 20-4059, ECF No. 63.

31.    On November 26, 2021, the Debtor objected to Plaintiffs' subpoena of Mr. Escoffie.[65]

32.    Mr. Escoffie filed his own "Motion to Quash and/or Modify Subpoena to Nonparty" (the "Motion to Quash") that same day.[66]

33.    On December 3, 2021, Plaintiffs filed a "Motion for Sanctions against Donald R. Triplett, Jr., For the Unauthorized Practice of Law," for allegedly drafting Mr. Escoffie's Motion to Quash.[67]

34.    After a hearing on December 6, 2021, the Court entered an "Order Granting in Part Motions to Quash and/or Modify Subpoena to Nonparty for Deposition of Jose Doniceth Escoffie" on December 7, 2021, ordering Mr. Escoffie to participate in a deposition.[68]

35.    On January 10, 2022, the Court entered an "Order Granting in Part and Denying in Part Plaintiff's Amended Motion for Sanctions Against Donald R. Triplett, Jr., For the Unauthorized Practice of Law."[69]

36.    On February 14, 2022, the Plaintiffs each filed an "Emergency Motion for Protective Order," contending a twenty (20) day deposition notice submitted by Defendant was inappropriate.[70]  The Court held a hearing on February 17, 2022, where Defendant withdrew the deposition notices, rendering the motions moot.

---

[65] *Black*, Adv. No. 20-4057, ECF No. 73; *Haltom*, Adv. No. 20-4059, ECF No. 75.

[66] *Black*, Adv. No. 20-4057, ECF No. 74; *Haltom*, Adv. No. 20-4059, ECF No. 76.

[67] *Black*, Adv. No. 20-4057, ECF No. 81; *Haltom*, Adv. No. 20-4059, ECF No. 83.

[68] *Black*, Adv. No. 20-4057, ECF No. 91; *Haltom*, Adv. No. 20-4059, ECF No. 93.

[69] *Black*, Adv. No. 20-4057, ECF No. 94; *Haltom*, Adv. No. 20-4059, ECF No. 96.

[70] *Black*, Adv. No. 20-4057, ECF No. 99; *Haltom*, Adv. No. 20-4059, ECF No. 101.

37.  On February 18, 2022, the Valks filed another subpoena concerning Mr. Escoffie.[71]

38.  On March 6, 2022, Mr. Escoffie filed another "Motion to Quash and/or Modify Subpoenas to Nonparties."[72]

39.  On March 10, 2022, the Court entered an "Order Granting in Part Motion to Quash and/or Modify Subpoenas to Parties," ordering that the documents Plaintiffs sought via the subpoenas were discoverable and should be produced by Mr. Escoffie, subject to a number of conditions.[73]

40.  On April 11, 2022, the Plaintiffs each filed: (1) "Plaintiffs' Motion for Protective Order Against Subpoena Issued to Sonia Paleo Garcia;"[74] and (2) "Motion for Protective Order Against Subpoena Issued to Donald Southerland."[75]

41.  Sonia Paleo Garcia was a former employee of the Debtor subsequently employed by the Valks.[76]

42.  On April 15, 2022, the Court entered an "Order on Motions for Protective Orders," denying the motions made by the Plaintiffs on behalf of Ms. Garcia and Mr. Southerland.[77]

43.  On June 14, 2022, Defendant filed another "Motion for Sanctions" against Plaintiffs and their counsel, Brandon J. Tittle.[78]

---

[71] *Valk*, Adv. No. 20-5058, ECF No. 112.

[72] *Valk*, Adv. No. 20-5058, ECF No. 117.

[73] *Valk* , Adv. No. 20-5058, ECF No. 120.

[74] *Black*, Adv. No. 20-4057, ECF No. 113; *Haltom*, Adv. No. 20-4059, ECF No. 114.

[75] *Black*, Adv. No. 20-4057, ECF No. 114; *Haltom*, Adv. No. 20-4059, ECF No. 102.

[76] *Black*, Adv. No. 20-4057, 46, Ex. L, ECF No. 170-12.

[77] *Black*, Adv. No. 20-4057, ECF No. 121; *Haltom*, Adv. No. 20-4059, ECF No. 123.

[78] *Black*, Adv. No. 20-4057, ECF No. 128; *Haltom*, Adv. No. 20-4059, ECF No. 130.

44.    On June 21, 2022, the Court entered an "Order Dismissing Defendant's Motion for Sanctions" because the motion did not contain the requisite negative notice language pursuant to LBR 7007.[79]

45.    On June 23, 2022, Defendant filed a "Motion to Compel Deponent Sonia Garcia and for Sanctions," which he amended on June 24, 2022.[80]  Plaintiffs each filed a "Motion to Quash Subpoena, or in the alternative Motion for Protective Order" on behalf of Ms. Garcia on June 24, 2022.[81]

46.    Debtor filed a second "Motion for Sanctions" against Plaintiffs and their counsel, Brandon J. Tittle, on June 28, 2022.[82]  The Court entered interim orders in each respective adversary deferring consideration of the motion until trial for these proceedings.[83]

47.    On June 29, 2022, the Court entered a "Sua Sponte Order on Discovery Motions Regarding Deposition of Sonia Paleo Garcia," ordering Plaintiffs to file amended complaints in each of their respective cases, and Debtor to file an amended answer in each case.[84]

48.    Plaintiffs filed a "First Amended Complaint to Object to Discharge" on July 12, 2022.[85]

---

[79] *Black*, Adv. No. 20-4057, ECF No. 129; *Haltom*, Adv. No. 20-4059, ECF No. 131.

[80] *Black*, Adv. No. 20-4057, ECF No. 130; *Haltom*, Adv. No. 20-4059, ECF No. 132.

[81] *Black*, Adv. No. 20-4057, ECF No. 137; *Haltom*, Adv. No. 20-4059, ECF No. 139.

[82] *Black*, Adv. No. 20-4057, ECF No. 141; *Haltom*, Adv. No. 20-4059, ECF No. 143.

[83] *Black*, Adv. No. 20-4057, ECF No. 162; *Haltom*, Adv. No. 20-4059, ECF No. 165.

[84] *Black*, Adv. No. 20-4057, ECF No. 142; *Haltom*, Adv. No. 20-4059, ECF No. 144.

[85] *Black*, Adv. No. 20-4057, ECF No. 145; *Haltom*, Adv. No. 20-4059, ECF No. 147.

49.     Defendant filed his "First Amended Answer" on July 26, 2022.[86]

50.     On August 2, 2022, Defendant served deposition notices upon each of the
        Plaintiffs.[87]

51.     On August 4, 2022, the Plaintiffs each filed an "Emergency Motion for Protective
        Order" seeking to avoid depositions.[88]

52.     On August 8, 2022, the Court entered an "Order Granting and Denying in Part
        Discovery Motions and Imposing Sua Sponte Meet and Confer Requirement,"
        finding Debtor was entitled to take depositions of each of the Plaintiffs, and again
        ordered Plaintiffs, Defendant, and their respective counsel to comply with the
        meet and confer requirement pursuant to Local Rule CV-7(h) and (i).[89]

53.     On August 13, 2022, Defendant filed an "Expedited Motion to Compel
        Deposition; Alternatively, Motion to Amend Scheduling Order."[90]  The Court
        granted the motion on August 18, 2022.[91]

54.     On August 14, 2022, Defendant filed a "Second Notice of Intention to Take Oral
        Deposition of Plaintiff Ron Valk."[92]

---

[86] *Black*, Adv. No. 20-4057, ECF No. 150; *Haltom*, Adv. No. 20-4059, ECF No. 152.

[87] *Black*, Adv. No. 20-4057, ECF No. 151; *Haltom*, Adv. No. 20-4059, ECF No. 153.

[88] *Black*, Adv. No. 20-4057, ECF No. 152; *Haltom*, Adv. No. 20-4059, ECF No. 154.

[89] *Black*, Adv. No. 20-4057, ECF No. 154; *Haltom*, Adv. No. 20-4059, ECF No. 156.

[90] *Black*, Adv. No. 20-4057, ECF No. 156; *Haltom*, Adv. No. 20-4059, ECF No. 158.

[91] *Black*, Adv. No. 20-4057, ECF No. 161; *Haltom*, Adv. No. 20-4059, ECF No. 163.

[92] *Valk*, Adv. No. 20-4058, ECF No. 182.

55.     On August 17, 2022, Defendant filed a: (1) "Motion to Compel Re-deposition of
        Deponent Shawn Valk";[93] and (2) "Motion for Sanctions" against Shawn Valk and
        Plaintiffs' counsel, Brandon J. Tittle.[94]

56.     On August 18, 2022, the Court entered an "Interim Order Regarding Motion for
        Sanctions, Compelling Deposition of Sonia Garcia, and Sua Sponte Order
        Amending Scheduling Order in Case 20-4058."[95]  The Court deferred hearing
        Defendant's sanctions motions until trial, again ordered Ms. Garcia to be deposed
        by Defendant, and extended the discovery deadline in Adv. No. 20-4058 to allow
        for the timely deposition of Ms. Garcia.

57.     Plaintiffs filed summary judgment motions on September 11, 2022.[96]

58.     On October 20, 2022, Defendant filed a "Motion to Strike Plaintiffs' Expert
        Witness," in which Defendant sought to have Mr. Donald Southerland struck as an
        expert witness.[97]  The Court entered an "Omnibus Order Dismissing Motions to
        Strike Plaintiffs' Expert Witness" on November 7, 2022.[98]

59.     On November 4, 2022, Plaintiffs filed the "Creditors' Motion to Strike and Motion
        for Sanctions."[99]  The Court dismissed the motion on November 7, 2022 for
        failure to comply with the meet and confer requirement under [Local Rule] CV-
        7(h) and (i).[100]

---

[93] *Valk*, Adv. No. 20-4058, ECF No. 183.

[94] *Valk*, Adv. No. 20-4058, ECF No. 184.

[95] *Black*, Adv. No. 20-4057, ECF No. 163; *Haltom*, Adv. No. 20-4059, ECF No. 164.

[96] *Black*, Adv. No. 20-4057, ECF No. 170; *Haltom*, Adv. No. 20-4059, ECF No. 172.

[97] *Black*, Adv. No. 20-4057, ECF No. 172; 196; *Haltom*, Adv. No. 20-4059, ECF No. 174.

[98] *Black*, Adv. No. 20-4057, ECF No. 176; *Haltom*, Adv. No. 20-4059, ECF No. 178.

[99] *Black*, Adv. No. 20-4057, ECF No. 175; *Haltom* Adv. No. 20-4059, ECF No. 177.

[100] *Black*, Adv. No. 20-4057, ECF No. 177; *Haltom*, Adv. No. 20-4059, ECF No. 179.

60.     On November 7, 2022, Defendant filed an "Amended Motion to Strike Plaintiffs'
        Expert Witness."[101]  The Court entered an order granting the motion on March 9,
        2023.[102]

61.     On November 8, 2022, Plaintiffs again filed a "Motion to Strike and Motion for
        Sanctions."[103]  On May 3, 2023, the Court entered an "Omnibus Order Denying
        Plaintiffs' Motions to Strike and For Sanctions."[104]

62.     Defendant filed a "Motion for Summary Judgment" on November 13, 2022.[105]

63.     On December 12, 2022, Plaintiffs filed a "Motion to Strike and For Sanctions
        Under Bankruptcy Rule 9011 Against Donald R. Triplett, Jr."[106]  On May 4, 2023,
        the Court entered an "Interim Order Regarding Motions to Strike and For
        Sanctions Under Bankruptcy Rule 9011 Against Donald R. Triplett, Jr."[107]  The
        Court deferred hearing the motions until trial for the adversary proceedings.

64.     On March 22, 2023, the Court entered an "Omnibus Order Denying Defendant's
        Motions for Summary Judgment."[108]

65.     On May 5, 2023, Defendant filed another "Motion to Strike," this time concerning
        particular summary judgment evidence filed by Plaintiffs.[109]  The Court dismissed

---

[101] *Black*, Adv. No. 20-4057, ECF No. 178; *Haltom*, Adv. No. 20-4059, ECF No. 180.

[102] *Black*, Adv. No. 20-4057, ECF No. 192; *Haltom*, Adv. No. 20-4059, ECF No. 193.

[103] *Black*, Adv. No. 20-4057, ECF No. 179; *Haltom*, Adv. No. 20-4059, ECF No. 181.

[104] *Black*, Adv. No. 20-4057, ECF No. 196; *Haltom*, Adv. No. 20-4059, ECF No. 197.

[105] *Black*, Adv. No. 20-4057, ECF No. 182; *Haltom*, Adv. No. 20-4059, ECF No. 184.

[106] *Black*, Adv. No. 20-4057, ECF No. 189; *Haltom*, Adv. No. 20-4059, ECF No. 190.

[107] *Black*, Adv. No. 20-4057, ECF No. 198; *Haltom*, Adv. No. 20-4059, ECF No. 199.

[108] *Black*, Adv. No. 20-4057, ECF No. 194; *Haltom*, Adv. No. 20-4059, ECF No. 195.

[109] *Black*, Adv. No. 20-4057, ECF No. 199; *Haltom*, Adv. No. 20-4059, ECF No. 200.

the motion for failure to meet notice requirements pursuant to LBR 7007 and LBR 9013.[110]

67.    On May 22, 2023, Defendant re-filed the "Motion to Strike."[111]

## II.  Facts Established at Trial

68.    Mark Weisbart, the Chapter 7 Trustee of Defendant's bankruptcy case, is not a party to these proceedings.

69.    The Court has issued numerous written opinions in these cases, including the following:

a.  *Halton v. Triplett (In re Triplett),* Nos. 19-42570, 20-04059, 2022 Bankr. LEXIS 64, 2022 WL 96598 (Bankr. E.D. Tex. 2022);

b.  *Black v. Triplett (In re Triplett)*, Nos. 19-42570, 20-4057, 20-4058, 20-4059, 2022 Bankr. LEXIS 2256, 2022 WL 3364953 (Bankr. E.D. Tex. 2022);

c.  *Black v. Triplett (In re Triplett)*, 645 B.R. 196 (Bankr. E.D. Tex. 2022);

d.  *Black v. Triplett (In re Triplett)*, Nos. 19-42570, 20-04057, 20-04058, 20-04059, 2023 Bankr. LEXIS 1181, 2023 WL 3222677 (Bankr. E.D. Tex. 2023); and

e.  *Black v. Triplett (In re Triplett)*, Nos. 19-42570, 20-04057, 20-04058, 20-04059, 2023 Bankr. LEXIS 1871, 2023 WL 4785640  (Bankr. E.D. Tex. 2023).

70.    On July 27, 2023, the Court entered the "Omnibus Order Denying Defendant's Motions to Strike."[112]

71.    On October 4, 2023, the Court conducted a pre-trial conference after which it entered the "Final Scheduling Order" scheduling a joint trial to be held starting April 15, 2024 at 9:30 a.m.[113]  Prior to the start of trial, the parties were required to confer and submit a joint proposed pre-trial order by March 15, 2024.[114]  The

---

[110] *Black*, Adv. No. 20-4057, ECF No. 202; *Haltom*, Adv. No. 20-4059, ECF No. 203.

[111] *Black*, Adv. No. 20-4057, ECF No. 203; *Haltom*, Adv. No. 20-4059, ECF No. 204.

[112] *Black*, Adv. No. 20-4057, ECF No. 208; *Haltom*, Adv. No. 20-4059, ECF No. 209.

[113] *Black*, Adv. No. 20-4057, ECF No. 216; *Haltom*, Adv. No. 20-4059, ECF No. 217.

[114] *Id.*

parties were also required by April 1, 2024 to file any objections to designated exhibits or depositions, to submit proposed findings of fact and conclusions of law, and to file any legal briefs.[115]

72.   The Court entered "Joint Pre-Trial Orders" on April 2, 2024.[116]  The parties only managed to make a single fact stipulation in the Joint Pre-Trial Orders, agreeing to the filing date of Defendant's voluntary petition.

73.   Prior to trial, both parties filed exhibit and witness lists as required.[117]  Plaintiffs' original exhibit list, as filed electronically, contained exhibits without labels.  For clarity of the record, Plaintiffs, at the Court's request, re-filed their exhibit list with properly labeled exhibits to which the Court refers where indicated in these findings.[118]  Similarly, Defendant's exhibit list omitted their proposed "Exhibit Y", a copy of which was subsequently filed as a supplement to Defendant's exhibit list.[119]

74.   Both parties filed objections to various of the opposing party's exhibits.  All these objections were heard, and resolved, as set forth on the trial record.  All evidentiary rulings on that trial record are here incorporated fully into these findings and conclusions.

75.   The following of Plaintiffs' exhibits were admitted:  1 through 26, and 30 through 44.  All other Plaintiffs' exhibits, if any, were either not offered or were not admitted.  No offer of proof was made by Plaintiffs of any exhibits excluded.

76.   The following of Defendant's proposed exhibits were admitted: C, E, F, G, H, I, L, T, U, HH, and II.  Separately, Exhibit J was admitted initially at trial but later stricken from the record after trial by separate order and is not part of evidence in the trial record.  All other Defendant's exhibits, if any, were either not offered or were not admitted.  No offer of proof was made by Defendant of any exhibits excluded.

---

[115] *Id.*

[116] *Black*, Adv. No. 20-4057, ECF No. 226; *Haltom*, Adv. No. 20-4059, ECF No. 227.

[117] *Black*, Adv. No. 20-4057, ECF Nos. 218 and 219; *Haltom*, Adv. No. 20-4059, ECF Nos. 219 and 220.

[118] *Black*, Adv. No. 20-4057, ECF No. 236; *Haltom*, Adv. No. 20-4059, ECF No. 237.

[119] *Black*, Adv. No. 20-4057, ECF No. 231; *Haltom*, Adv. No. 20-4059, ECF No. 232.

77.    At the start of trial, Plaintiffs appeared and sought to call Defendant as their first witness. However, Defendant was not present in the courtroom and had not been subpoenaed by Plaintiffs. This failure to subpoena is astonishing considering the length of time these proceedings have been pending, their contentious nature, that trial was set approximately six months in advance, and that numerous filings were made by both parties in the days leading up to the start of trial. There can therefore be little doubt that both parties, and their counsel, were well and fully aware of the trial date.

78.    Plaintiffs had no witnesses to examine, other than Defendant who was not present, which fact prompted the Court to instruct the parties to confer regarding whether any agreement could be reached by which Plaintiffs could present cases in chief. After conferring, Defendant consented for admission of Plaintiffs' exhibits enumerated above. Defendant further consented for Plaintiffs' counsel to read into the record Exhibit 44, which Plaintiffs' counsel in fact did. No further evidence was offered by Plaintiffs.

79.    The Court did not find the testimony presented by Plaintiffs' counsel's reading of Exhibit 44 illustrative of the merits of Plaintiffs' allegations, as Plaintiffs' counsel's presentation contained much *argument* not ordinarily admitted into *evidence* comprising a case in chief.

80.    Defendant's presentation of rebuttal evidence was more substantive. However, Defendant's counsel repeatedly strayed outside the parameters delineated for trial by the Court.

81.    The Court first heard rebuttal testimony from David Stephan.

82.    David Stephan is an attorney originally licensed to practice law in 1988.

83.    David Stephan has personal familiarity with Plaintiffs and Defendant due in part to his membership in a triathlon club in which Plaintiffs and Defendant were also members.

84.    David Stephan has represented, at various times, Defendant and Plaintiffs.

85.    David Stephan, sometime during August 2017, revised Defendant's will to remove Shawn Valk as executor of Defendant's will. Shawn Valk was a named plaintiff in Adv. No. 20-4058 previously pending in this Court. Adv. No. 20-4058 was previously dismissed voluntarily by Ron and Shawn Valk.

86.   Defendant asked David Stephan to revise his will because of unspecified business
      disputes which had arisen between Defendant and Shawn Valk.

87.   Defendant then, in October 2017, hired David Stephan to attempt to collect a large
      sum of money allegedly him owed by Ron Valk, Shawn Valk, or a company
      owned by them.

88.   This collection effort by Defendant was, according to David Stephan, the first of
      multiple litigation suits between the parties.

89.   David Stephan assisted Defendant in obtaining bankruptcy counsel, and Defendant
      ultimately hired Joyce Lindauer as his bankruptcy attorney.

90.   David Stephan is one of Defendant's largest creditors, with an unsecured debt
      scheduled of $135,000.00.  Yet, Mr. Stephan testified he continues to provide
      legal representation to Defendant.

91.   The Court second heard rebuttal testimony from Joyce Lindauer.

92.   Joyce Lindauer is an attorney originally licensed to practice law in 1984 and
      currently practices bankruptcy law.

93.   Defendant was referred to her for bankruptcy advice.

94.   After consultation with Joyce Lindauer, Defendant was advised to consider filing
      bankruptcy and provided with a questionnaire to fill out and return.[120]  Joyce
      Lindauer testified that all new clients are given a questionnaire and various
      information forms to fill out and return.  Once those forms and questionnaire are
      returned, Mrs. Lindauer reviews them and asks for further and clarifying
      information.  All the information provided is used to prepare the necessary papers
      for a client's bankruptcy filing, including schedules and statements.  This process
      was used by Mrs. Lindauer to prepare Defendant's bankruptcy filing, and
      Defendant was very involved in the process.

95.   Part of the information provided to Joyce Lindauer by Defendant was a detailed
      listing of creditors and accounts.[121]  Mrs. Lindauer testified she considered

---

[120] Ex. G.

[121] Ex. F.

Defendant detailed, sincere in his efforts to fill out the required documentation, and under stress.

96.   In his questionnaire, Defendant disclosed to his attorney an ownership interest as a sole proprietor of Preferred Platinum Construction, Copper Creek Distributors, DFW Design & Remodeling, and Copper Creek Fine Cabinetry.[122]

97.   Defendant listed three open bank accounts on his questionnaire under the category for money deposits, one located at Texans Credit Union, one at Prosperity Bank xxxxxx919, and one for Preferred Platinum Construction xxxxxx989.[123]  Mrs. Lindauer testified these were personal accounts of Defendant, as opposed to accounts owned by a corporation or other legal entity on which Defendant may have signatory authority.  Because Preferred Platinum Construction was listed as a sole proprietorship by Defendant, its account was included in the personal accounts of Defendant on his questionnaire.

98.   Claims or causes of action against Ron Valk were listed in the questionnaire.[124]

99.   Defendant stated in the questionnaire that both he and his husband, Jose Escoffie, were self-employed.  Defendant listed variable income for both, and Joyce Lindauer stated it is her practice to rely on answers to the questionnaire to determine income and expenses of her debtor clients.  Defendant's income was listed as being derived from two of his sole proprietorships, Preferred Platinum Construction and Copper Creek Distributors.[125]

100.  Schedule I requires a debtor to estimate and disclose "monthly income" which Joyce Lindauer testified is different from "revenue."  The questionnaire asks for "gross income."[126]

101.  In the questionnaire Defendant was asked if, within 4 years prior to filing for bankruptcy, he owned a business or was connected to business, including as a sole

---

[122] Ex. G.

[123] *Id.*

[124] *Id.*

[125] *Id.*

[126] *Id.*

proprietor, member, partner, officer, director, or managing executive.[127] Defendant answered in the affirmative, and listed the following:

    a. Managing member of DFW Design & Remodeling, LLC;[128]
    b. 10% owner of Platinum Storage GL, LLC;
    c. Sole Proprietor as Preferred Platinum Construction; and
    d. Officer until 2017 of Copper Creek Distributors, Inc.

102. Joyce Lindauer testified that after a bankruptcy case has been filed and a §341 meeting of creditors held, it is not uncommon for schedule amendments to be required or requested by the Chapter 7 Trustee. In this case, amendments were required and made.[129]

103. After the §341 meeting of creditors was held by Mark Weisbart, the Chapter 7 Trustee of Defendant's bankruptcy case, Mr. Weisbart requested additional information and documentation from Defendant including bank statements. On November 11, 2019, Defendant provided bank statements in an email to him which was copied to Mrs. Lindauer and her legal assistant.[130] Defendant's email states he sent both "personal" and "business" account statements, and that he was then waiting on USAA bank statements to be provided by USAA which would be forwarded when received.[131] It does not appear that an account of any type at USAA was listed in the questionnaire provided to Mrs. Lindauer by Defendant.

104. As previously found by the Court,[132] the Valks filed the 2004 Motion on November 18, 2019.[133] On December 13, 2019, Plaintiffs Jeremy Haltom and Keith Black both filed joinders to the 2004 Motion.[134] The Court granted the 2004

---

[127] *Id.*

[128] "DFW Design & Remodeling, LLC" is obviously like the sole proprietorship under the name "DFW Design & Remodeling" yet is a distinct legal entity.

[129] Ex. 2; *see also* Ex. H.

[130] Ex. I.

[131] *Id.*

[132] *See supra,* Pgs. 6-7.

[133] *In re Triplett*, No. 19-42570, ECF No. 50; *see also* Ex. 6.

[134] *In re Triplett*, No. 19-42570, ECF Nos. 63, 64.

Motion on February 3, 2020, and entered its "Order Granting Creditors Shawn Valk and Ron Valk's Motion for Examination Under Bankruptcy Rule 2004 of Donald R. Triplett, Jr." (the "2004 Order").[135]

105.  Regarding document production, the 2004 Order required the following of Triplett:

> "Triplett is directed to (a) take any *reasonable* actions necessary for the Valks, Haltom, and Black to obtain those documents identified on Exhibit A attached hereto and incorporated by reference *from the original sources* of such documents; and (b) produce any documents identified on Exhibit A *that are in his possession or control* and have not yet been produced to the Valks, Haltom, and Black. Such documents may be used for any lawful purpose within the scope of the bankruptcy proceedings, but shall not be used in any manner or means to harass or interfere with the Debtor, his employers or his customers and vendors" [emphasis added].[136]

106.  The 2004 Order further permitted Plaintiffs to "employ all lawful processes, including subpoena powers, to compel attendance at the Examination, production of all of the requested documents in the Motion *from third parties*, and compliance with this Order" [emphasis added].[137]  Defendant was also required to "cooperate with all discovery requests from the Valks, Haltom, and Black in good faith to ensure that the Valks, Haltom, and Black receive the documents in a timely manner."[138]

107.  On January 28, 2020 before entry of the 2004 Order, counsel for Plaintiffs sent a letter to Joyce Lindauer asking for a listing of bank accounts and related information.[139]  This letter demanded that certain information be provided on two days' notice.[140]  Mrs. Lindauer responded the same day, but on February 6, 2020,

---

[135] *In re Triplett*, No. 19-42570, ECF No. 99; *see also* Ex. 8.

[136] Ex. 8.

[137] *Id*.

[138] *Id*.

[139] Ex. 9.

[140] *Id*.

counsel for Plaintiffs wrote that no documentation had yet been received.[141] Mrs. Lindauer responded on February 6, 2020, that Plaintiffs had "enough information to serve subpoenas right now from what I sent you and what you have on hand in your files. I will send more information as it comes in."[142] Later on February 6, 2020, Mrs. Lindauer again wrote Plaintiffs' counsel providing a listing of credit card and bank account information.[143] Mrs. Lindauer testified this listing did not contain full account numbers because Defendant, at the time, did not possess full account numbers because of the destruction of his records, despite efforts to obtain the information sought by Plaintiffs. Defendant later testified that he spoke with the relevant financial institutions to obtain account statements, but that some of these institutions charged significant fees to provide him a copy of statements.

108.   Attorneys for Defendant and Plaintiffs had difficulty communicating precisely about what information Plaintiffs were seeking compared to what information Defendant had already provided or would additionally provide.[144] Plaintiffs' counsel threatened to file a motion to compel.

109.   On cross examination, Mrs. Lindauer stated that boxes of documents were produced to Plaintiffs, including some electronically, but could not remember exactly when. She testified that documents were first provided to her by Defendant, then reviewed by her, then produced to Plaintiffs. Some of these were in paper format; others were electronic.

110.   The 2004 Order required Defendant to submit to a ten-hour examination.[145]

111.   As the Court previously found.[146] Plaintiffs filed a "Second Motion to Extend Time to File Complaint to Determine Dischargeability" on February 28, 2020.[147] After a hearing, the Court granted the motion on March 16, 2020 in its "Order

---

[141] Ex. 10.

[142] Ex. 11.

[143] Ex. 12.

[144] Ex. 13.

[145] Ex. 8.

[146] *See supra,* Pg. 7.

[147] *In re Triplett*, No. 19-42570, ECF No. 104; *see also* Ex. 14.

Granting Creditors' Emergency Motion for Second Extension of Deadline for
Filing Complaints Under 11 U.S.C. §§ 523 & 727."[148]

112.   As previously found by the Court, on May 18, 2020, an attorney for Plaintiffs
conducted the 2004 Examination of Debtor.[149]

113.   During the 2004 Examination, a discussion between the attorneys present,
including Mrs. Lindauer, was held regarding the permissible length of the
examination.  The attorney taking the examination asked whether Defendant
understood "that the Court has provided us with essentially an unlimited amount
of time. Do you understand that?"  Mrs. Lindauer interrupted and stated, "I
disagree with that."[150]  At trial, Mrs. Lindauer testified that she was unaware of a
court order requiring a 2004 examination of unlimited duration.  Defendant's 2004
Examination lasted a total of approximately three days in Mrs. Lindauer's
recollection.  Defendant also testified the 2004 Examination lasted three days, and
that he similarly was unaware of the requirement that he submit to a 2004
examination of unlimited duration.

114.   As previously found by the Court.[151] Plaintiffs filed their joint Motion to Compel
on June 2, 2020.[152]  Debtor objected to the Motion to Compel, and on July 14,
2020, the Court held a hearing on the Motion to Compel.  The Court granted the
Motion to Compel on July 21, 2020.[153]

115.   In its order granting the Motion to Compel, the Court ordered Debtor to "re-appear
and continue to give testimony and be deposed for no longer than six (6) hours, on
the record, by Creditors in connection with Triplett's Rule 2004 examination...If
additional time is needed, Triplett shall appear, testify, and be deposed by
Creditors in connection with Triplett's Rule 2004 examination for no longer than

---

[148]  *In re Triplett*, No. 19-42570, ECF No. 113; *see also* Ex. 16.

[149] *See supra,* Pg. 7.

[150] Ex. 17.

[151] *See supra,* Pg. 8.

[152] *In re Triplett*, No. 19-42570, ECF No. 124; *see also* Ex. 19.

[153] *In re Triplett*, No. 19-42570, ECF No. 152; *see also* Ex. 20.

three (3) hours, on the record..."[154]  The Court further required Defendant to
"answer Creditors questions regarding Triplett's financial condition and financial
transactions, prior to the filing of the bankruptcy case and after the filing,
however, Triplett does not have to answer questions  concerning the ongoing IRS
civil investigation also known as the IRS whistleblower case, and does not have to
provide Creditors with the names of Triplett's or affiliated companies' clients."[155]
Defendant appeared as ordered on August 8, 2020, and was examined by
Plaintiffs.[156]

116.    Meanwhile, Defendant had been requested to produce more information.  On July
10, 2020, Defendant sent an email with responsive documentation available for
download to Joyce Lindauer and her legal assistant, Gina Shipman, among
others.[157]  After reviewing this information, Mrs. Lindauer told Defendant some of
this additional information was not provided to her in the questionnaire and related
forms prior to his filing bankruptcy.[158]  Defendant disagreed that he had provided
this additional information to Mrs. Lindauer, an assertion with which Mrs.
Lindauer shortly thereafter agreed.[159]

117.    Mrs. Lindauer testified it was difficult for Defendant to obtain information, both
for her and in response to document requests after filing bankruptcy, because
many of the pertinent records were left in an office Defendant previously used
which was owned by Ron and/or Shawn Valk.  According to Mrs. Lindauer, after
disputes arose between these individuals Defendant lost access to these records,
including a computer.  Defendant told Mrs. Lindauer many of these records were
destroyed by Ron and/or Shawn Valk.

118.    Joyce Lindauer testified there were some records from USAA which Defendant
was unable to obtain after efforts to do so.

---

[154] *Id*. at 1-2, ¶ 2.

[155] *Id*. at 2, ¶ 3.

[156] Ex. 21.

[157] Ex. E.

[158] *Id*.

[159] *Id*.

119.    Mrs. Lindauer acknowledged the plausible possibility that her office failed to correctly include every piece of information provided in the schedules prepared for and signed by Defendant.  She stated Defendant was always helpful and willing to answer or respond to questions or document requests.

120.    When asked about Defendant's "reasonable" actions taken to make it possible for Plaintiffs to obtain documents from the original sources of such documents, Mrs. Lindauer testified Defendant provided what records he had, attempted to obtain other records including from USAA, and that Mrs. Lindauer understood at the time from Plaintiffs' counsel that Plaintiffs' counsel would obtain by direct subpoena sent directly to the relevant financial institutions those financial records Defendant could not obtain through his own efforts.

121.    The Court last heard testimony from Defendant.

122.    Defendant interviewed several potential bankruptcy attorneys before choosing Joyce Lindauer.  At the time, numerous lawsuits were pending against him.

123.    Defendant filled out the questionnaire from Mrs. Lindauer's office and received some help in doing so from her assistant, Gina Shipman.

124.    Defendant has no formal accounting training but has some bookkeeping experience.

125.    Defendant testified he was owner of Preferred Platinum Construction.  Further, Defendant was an officer at one time, but not an owner of, Copper Creek Distributors, Inc., which Defendant testified is owned by Jose Escoffie.

126.    Defendant testified he understood and was told only to provide information regarding and to list open bank accounts in his personal name, not business accounts unless, like Preferred Platinum Construction, that business was a sole proprietorship.

127.    Defendant testified he owned ninety percent of DFW Design & Remodeling, LLC while Plaintiff, Jeremy Haltom owned the other ten percent.

128.    Defendant's income fluctuates based upon jobs and product sales.  To calculate his income, Defendant provided Gina Shipman with information for use in calculating his income and expenses, which she did on an average basis using an unknown methodology with information from bank statements and tax returns.

129. Defendant did not recall receiving a draft of his proposed bankruptcy schedules for review in advance of a meeting in Mrs. Lindauer's office on the petition date. He reviewed, discussed, and approved the drafts provided at that meeting. He stated that some months passed between filling out the questionnaire and approving schedules prepared for him. He believed the schedules were accurate when filed.

130. Income listed on his original Schedule I was derived from working as a driver, from the sole proprietorship Preferred Platinum Construction, and from working with his husband for Copper Creek Distributors, Inc.

131. Defendant provided tax returns to Mrs. Lindauer's office for use in preparing his statement of financial affairs. Defendant testified he thought his 2017 income tax return had been filed which he later discovered was incorrect after reviewing a certified mail receipt.

132. Defendant testified he always tried to answer his attorney's questions, and that he was truthful when answering questions propounded to him during the 2004 Examination.

133. When Defendant realized his failure to list one or more accounts at USAA, he contacted USAA to obtain statements and sent that information to the Trustee through his attorney.[160] This was difficult because at some point, USAA changed the numbers for the relevant accounts.

134. Regarding documents requested by Plaintiffs in connection with the 2004 Order, Defendant testified that Mrs. Lindauer asked him for information he had already provided to her office. In order not to miss providing requested documents, he sent her a detailed explanation of the documents produced.[161]

135. Reagon Herod and David Gibson are attorneys who provided other representation to Defendant during the time in 2020 when he was producing documents.[162]

136. Defendant testified that a computer which held many of the records requested to be produced by him was removed by Sonia Garcia from its location in his former office in a building owned by Ron and/or Shawn Valk. Previously, Sonia Garcia

---

[160] Ex. I.

[161] Ex. E.

[162] *Id.*

had been employed by Defendant from 2013 to 2017, but she subsequently was employed by Ron and/or Shawn Valk. When this computer was eventually returned to him, the records in question had been deleted. These missing records included invoices, time records, spreadsheets, and most records for Debtor's sole proprietorships DFW Design & Remodeling and Preferred Platinum Construction.

137.   Defendant testified he produced what bank statements he had or could obtain but did not produce those he did not have or could not obtain. This is congruent with his email dated July 10, 2020 to his attorney, Joyce Lindauer.[163] Defendant further testified that Mrs. Lindauer told him he did not need to produce bank statements he did not have or could not obtain because those records would be subpoenaed by Plaintiffs directly from the relevant financial institutions.

138.   Defendant testified he believes his efforts to produce or obtain requested documents, and his actual production of requested documents, complies with the requirements of the 2004 Order. The Court agrees.

139.   Defendant produced what bank statements he had or could obtain in the categories referenced in Exhibit A attached to the 2004 Order but did not produce those he did not have or could not obtain.[164] The 2004 Order states with respect to certain categories of documents, including bank statements, that "[o]riginals of such documents will be further requested from the financial institution." Defendant did not prevent or attempt to prevent Plaintiffs from seeking by subpoena the production of such documents from relevant financial institutions.

140.   Defendant testified he did not have access to accounting books or ledgers for the years 2017 and 2018 because those records were destroyed by Sonia Garcia after she began working for Ron and/or Shawn Valk, or by another Valk employee named Willie Parker. In addition to computer records there were, according to Defendant, some paper records which were in his former office in the building owned by Ron and/or Shawn Valk. These records included profit and loss statements, check registers, and balance sheets. It is plausible, and the Court here found Defendant's testimony credible, that documents were destroyed by Sonia Garcia or Willie Parker and so could not be produced by Defendant.

---

[163] *Id.*

[164] Ex. 8.

141.   During these proceedings, Defendant attempted to obtain discovery from Sonia
Garcia.  However, Plaintiffs filed motions for protective orders to prevent such
discovery, together with emergency hearing requests on those motions.[165]
Defendant timely objected.[166]  The Court denied both motions for protective
orders.[167]  In denying the motions for protective orders, this Court wrote the
following:

> "Plaintiffs and Defendant have experienced significant difficulties
> conducting discovery in these cases, and the Court has conducted numerous
> hearings on discovery issues. The time for discovery has been extended
> multiple times because of these difficulties. The Motions are but the latest
> examples of such difficulties. The Court considered the pleadings and
> objections, the attachments thereto, and finds that a hearing on these
> matters would not be beneficial." [168]

142.   After denial of Plaintiffs' motions protective orders, Defendant attempted to
depose Sonia Garcia.  That attempt was unsuccessful.  Thus, Defendant filed
motions to compel and for sanctions.[169]  In addition to objecting, and despite prior
denial of their motions for protective orders, Plaintiffs filed motions to quash
Defendant's subpoenas or for protective orders.[170]  Rather than repeat its prior
ruling, the Court held a status conference after which it required Plaintiffs to re-
plead their claims, gave Defendant a corresponding opportunity to amend his
answers, and imposed on both sides a meet and confer requirement.[171]

143.   Later, the Court was forced to compel Plaintiffs to permit Defendant to depose
Sonia Garcia, and to order Plaintiffs and Plaintiffs' counsel "to comply with the

---

[165] *Black*, Adv. No. 20-4057, ECF Nos. 113 and 117; *Haltom*, Adv. No. 20-4059, ECF Nos. 113 and 118.

[166] *Black*, Adv. No. 20-4057, ECF No. 119; *Haltom*, Adv. No. 20-4059, ECF No. 121.

[167] *Black*, Adv. No. 20-4057, ECF No. 121; *Haltom*, Adv. No. 20-4059, ECF No. 123.

[168] *Id*.

[169] *Black*, Adv. No. 20-4057, ECF No. 134; *Haltom*, Adv. No. 20-4059, ECF No. 136.

[170] *Black*, Adv. No. 20-4057, ECF No. 137; *Haltom*, Adv. No. 20-4059, ECF No. 139.

[171] *Black*, Adv. No. 20-4057, ECF No. 142; *Haltom*, Adv. No. 20-4059, ECF No. 144.

directives of Fed. R. Civ. P. 30 when attending and participating in the deposition."[172]

144.  Defendant admitted he was hesitant to produce documents to Plaintiffs because he anticipated they might be used by Plaintiffs to contact his professional contacts to prevent Defendant from being able to earn a living from working.  This concern was credible to the Court.

145.  After the 2004 Examination and their first Motion to Compel, Plaintiffs filed another Motion to Compel Discovery on September 29, 2020.[173]  Defendant objected to the Motion to Compel Discovery on October 20, 2020.[174]  The Court conducted a hearing on Plaintiffs' Motion to Compel Discovery on December 4, 2020.  At that hearing, after hearing arguments of counsel, the Court stated as follows:

> "THE COURT:  That's enough.  No, both of you stop.
>
> Most of the issues, I think, that are being raised can and should be part of the 727 litigation.  The issues before the Court today [are] simply the 2004 issue and the debtor's failure to comply with the 2004 order and the latest order.  Mr. Gibson is correct that we have narrowed, based on the Court's review of the production, we have narrowed the production items to the items identified in the last order.  And in light of the debtor's assertion of its Fifth Amendment privilege, the Court will assume an adverse inference that the debtor has not produced all documents responsive to the last three items in the order only.
>
> And for that reason, the Court finds that some sanctions are appropriate. The Court will grant as sanctions the cost of counsel for the [D]ebtor, Mr. Tittle, to appear today in response to the issues related to the last filed order."[175]

146.  At the December 4, 2020 hearing, the Court also stated:

---

[172] *Black*, Adv. No. 20-4057, ECF No. 162; *Haltom*, Adv. No. 20-4059, ECF No. 164.

[173] *See supra*, Pgs. 8-9; Ex 22; *see also In re Triplett*, No. 19-42570, ECF No. 171.

[174] Ex. 32.

[175] Ex. 34, Pgs. 43-44 of 46.

"THE COURT:  Why don't you [Mr. Tittle] stop interrupting me and you'll hear my ruling, okay.

It is the Court's belief that Mr. Tittle, much of the issues and the so-called strategies all relate to a 727 action, which can be brought in the 727 action. As far as the Court is concerned, it is the [D]ebtor's failure to certify today that they have provided everything and the [D]ebtor—and the Court's adverse inference that the [D]ebtor has not provided everything responsive to the narrow discovery that the Court has required from the last hearing.

The Court will grant as sanctions, $500.  Mr. Gibson, I'm going to ask that you submit an order to the Court consistent with the Court's ruling.  That order is due within 7 calendar days.  Again, all other issues can be taken up in the context of the 727 action.[176]

147.  The Court then entered its "Order Granting in Part/Denying in Part Creditors' Motion to Compel Discovery and Request for Sanctions."[177]  The Court ordered Debtor to pay Plaintiffs $500.00 for reasonable attorneys' fees and denied the remainder of the Motion to Compel Discovery.[178]

148.  The next day, Plaintiffs filed a reconsideration motion, to which Defendant does not appear to have objected.[179]  After a telephonic hearing on another motion, the Court reconsidered its original order on the Motion to Compel Discovery and entered a second "Order Granting in Part and Denying in Part Creditors' Motion to Compel Discovery and Request for Sanctions."[180]  In this revised order, the Court ordered Debtor to pay $500.00 in sanctions to Plaintiffs' counsel because of a "failure to certify that he produced all responsive documents in connection with the Creditors' letter dated November 16, 2020, in which the Creditors requested,

---

[176] Ex. 34, Pgs. 44-45 of 46.

[177] *In re Triplett*, No. 19-42570, ECF No. 196.

[178] *Id.*; *see supra*, Pg. 9.

[179] *In re Triplett*, No. 19-42570, ECF No. 197.

[180] *In re Triplett*, No. 19-42570, ECF No. 208;  Ex. 33.

among other things, all Intuit QuickBook[s] files for DFW Design and Preferred
Platinum Construction for the period 9/19/2015 to 9/19/2019 . . ."[181]

149. Defendant testified that he paid the $500.00 in sanctions to Plaintiffs' counsel.
Defendant also testified that he was willing to sign a certification as referenced in
revised the "Order Granting in Part and Denying in Part Creditors' Motion to
Compel Discovery and Request for Sanctions."[182]  However, Defendant stated he
was instructed by his attorney not to sign such a certification.

150. Defendant testified at trial that "DFW Design" utilized QuickBooks Desktop while
operating, but it is unclear if Defendant meant Debtor's sole proprietorship d/b/a
DFW Design & Remodeling, or the separate entity DFW Design & Remodeling,
LLC which is owned in part by Plaintiff, Jeremy Haltom.  Defendant also testified
that he had personally never used QuickBooks except that his sole proprietorship
Preferred Platinum Construction had used QuickBooks.  What records Defendant
could access, he testified he produced.

151. Defendant produced a copy of his 2017 tax return, not realizing that return had not
in fact been filed.  That return was filed as soon as this mistake was discovered.
Returns for 2018 and later have not yet been filed because, according to
Defendant, he was advised by his counsel not to file those returns, and he did not
have records available to file for some years.  He has since obtained the needed
records, in part through litigation discovery from Plaintiffs, and intends to file
these returns when advised by his counsel to do so.  Defendant did not see the
proof of claim filed by the Internal Revenue Service in his case prior to his
attendance and testimony at his § 341 meeting of creditors.

152. Defendant testified it is his understanding that there is a difference between
"revenue" and "deposits."  The Court agrees.  Deposits are only monies which are
deposited into a particular bank account.  Neither "revenue" nor "deposits" are
necessarily equivalents for "gross income" or "net income" or "monthly income."
Defendant attempted to provide his attorney information to correctly calculate his
"monthly income" as required to be disclosed on his schedules.  Defendant
attempted to provide his attorney information to correctly disclose his "income
from employment or from operating a business" as required to be disclosed on his
statement of financial affairs.

---

[181] *Id.*

[182] *Id.*

153.    Defendant was familiar with what it means to sign a document under penalty of perjury.

154.    To the extent any of these findings of fact constitute conclusions of law, the Court expressly adopts them as such.

## CONCLUSIONS OF LAW[183]

### III.  Jurisdiction and Allocation of Judicial Power

1.    The Court has jurisdiction to consider the adversary complaint in this proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

2.    This Court has authority to enter a final judgment on all issues raised in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A), (I), and (J) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

### IV. Discharge and Exceptions Under 11 U.S.C. § 727

3.    The Bankruptcy Code requires that a debtor be granted a discharge unless one of the statutory grounds for denial of that discharge is proven.  11 U.S.C. § 727(a).

4.    The denial of a debtor's discharge is considered an extreme remedy.  *Pher Partners v. Womble* (*In re Womble*), 289 B.R. 836, 845 (Bankr. N.D. Tex. 2003) (citing *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993)).

5.    "Courts should deny discharge only for very specific and serious infractions." *Martin Marietta Matl's Southwest, Inc. v. Lee* (*In re Lee*), 309 B.R. 468, 476 (Bankr. W.D. Tex. 2004) (citing *Ichinose v. Homer Nat'l Bank* (*In re Ichinose*), 946 F.2d 1169, 1172 (5th Cir. 1991)).

6.    A denial of discharge is to be imposed only upon those debtors who have not been honest and forthcoming about their affairs and therefore have not fulfilled the duties of full disclosure required of a bankruptcy debtor.  *Buckeye Retirement Properties v. Tauber* (*In re Tauber*), 349 B.R. 540, 545 (Bankr. N.D. Ind. 2006)

---

[183] Unless indicated specifically otherwise, all conclusions of law are applicable to and made in both above styled adversary proceedings.

["The denial of a debtor's discharge is akin to financial capital punishment. It is reserved for the most egregious misconduct by a debtor."].

7. Thus, speculation and surmise about the existence of such misconduct are insufficient. Probative evidence must be presented.

8. To fulfill the statutory policy of providing a debtor with a "fresh start," the provisions of § 727(a) are construed strictly against parties seeking to deny the granting of a debtor's discharge and liberally in favor of a debtor. *Laughlin v. Nouveau Body & Tan, L.L.C.* (*In re Laughlin*), 602 F.3d 417, 421 (5th Cir. 2010); *Benchmark Bank v. Crumley* (*In re Crumley*), 428 B.R. 349, 356 (Bankr. N.D. Tex. 2010); *First United Bank & Trust, Co. v. Buescher (In re Buescher)*, 491 B.R. 419, 431 (Bankr. E.D. Tex. 2013) (citing *Ichinose v. Homer Nat'l Bank (Matter of Ichinose)*, 946 F.2d 1169, 1172 (5th Cir. 1991)).

9. The same construction principles favoring a debtor are imposed in an action to determine the dischargeability of a particular debt. *FNFS, Ltd. v. Harwood (In re Harwood)*, 637 F.3d 615, 619 (5th Cir. 2011) (citing *Hudson v. Raggio & Raggio, Inc.* (*In re Hudson*)*,* 107 F.3d 355, 356 (5th Cir. 1997)).

10. The Plaintiff bears the burden of proving that the Debtor-Defendant is not entitled to a discharge under § 727. The standard of proof for its claim is a preponderance of the evidence. *Cadle Co. v. Duncan* (*In re Duncan*)*,* 562 F.3d 688, 695 (5th Cir. 2009); *Beaubouef v. Beaubouef* (*In re Beaubouef*)*,* 966 F.2d 174, 178 (5th Cir. 1992); *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

## A. 11 U.S.C. § 727(a)(3)

11. 11 U.S.C. § 727(a)(3) provides that:

"(a) The court shall grant the debtor a discharge, unless —

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;"

12. "A court may deny a debtor a discharge under 11 U.S.C. § 727(a)(3) if the debtor has destroyed or failed to keep records from which his financial condition may be ascertained." *Judgment Factors, L.L.C. v. Packer (In re Packer)*, 816 F.3d 87, 93-94 (5th Cir. 2016).

36

13.  The premise of this subsection is that an individual who desires the privilege of a bankruptcy discharge is required to provide his creditors "with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial accuracy for a reasonable period past to present." *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996); *see also Broad Nat'l Bank v. Kadison*, 26 B.R. 1015, 1018 (D.N.J. 1983) ["The privilege of a discharge is hinged on disclosure."] and *WTHW Inv. Builders v. Dias (In re Dias)*, 95 B.R. 419, 422 (Bankr. N.D. Tex. 1988) ["Section 727(a)(3) is intended to allow creditors and/or the trustee to examine the debtor's financial condition and determine what has passed through a debtor's hands."].

14.  Plaintiffs have the initial burden to "prove that the debtor failed to keep and preserve his financial records and that this failure prevented the party from ascertaining the debtor's financial condition." *Robertson v. Dennis (In re Dennis)*, 330 F.3d 696, 703 (5th Cir. 2003). If the creditor meets this threshold, the burden shifts to the debtor to exhibit that the failure to keep records was justified under the circumstances. *Buescher v. First United Bank & Trust (In re Buescher)*, 783 F.3d 302, 308 (5th Cir. 2015) (citing *Dennis*, 330 F.3d at 703).

15.  Plaintiffs contend Defendant failed to turn over: (1) information regarding personal bank accounts and others belonging to DFW Design & Remodeling, Preferred Platinum Construction, and Copper Creek, (2) QuickBooks records for DFW Design & Remodeling, Preferred Platinum Construction, and Copper Creek, and (3) Defendant's 2017 income tax return.[184]

16.  The evidence presented to the Court was convincing that Defendant made significant efforts to obtain, produce, and disclose records from which his financial condition and business transactions might be obtained. The Court takes this duty on the part of a debtor seriously.

17.  The evidence was equally convincing that in the underlying bankruptcy, Plaintiffs' counsel was quick to seek to sanction and compel, but less diligent in clearly communicating precisely with counsel for Defendant regarding what was being sought. While Defendant himself sincerely attempted to meet the disclosure requirements necessitated by a bankruptcy filing and the additional demands made by Plaintiffs, his counsel at times was less successful at being clearly responsive to or communicative regarding the significant demands made by Plaintiffs.

---

[184] Amend. Compl., *Black*, Adv. No. 20-4057, 12-13, ¶¶ 53-57, ECF No. 145; Amend. Compl., *Haltom*, Adv. No. 20-4059, 12-13, ¶¶ 53-57, ECF No. 147. *See also* Joint Pre-Trial Order, Adv. No. 20-4057, 9-10, ECF No. 226; *Haltom*, Adv. No. 20-4059, 9-10, ECF No. 227.

18. With respect to the allegedly undisclosed information regarding Defendant's
personal bank accounts and others belonging to DFW Design & Remodeling,
Preferred Platinum Construction, and/or Copper Creek, if any, the Court concludes
in applying the above standards to the evidence that Plaintiffs, Keith Black and
Jeremy Haltom, have each failed to sustain their burden and prove by a
preponderance of the evidence that Defendant, Donald R. Triplett, Jr., destroyed or
failed to keep such records from which his financial condition and business
transactions may be ascertained sufficient to deny him a discharge under 11
U.S.C. § 727(a)(3).

19. With respect to the allegedly undisclosed QuickBooks records for DFW Design &
Remodeling, Preferred Platinum Construction, and Copper Creek, the Court
concludes in applying the above standards to the evidence that Plaintiffs, Keith
Black and Jeremy Haltom, have each failed to sustain their burden and prove by a
preponderance of the evidence that Defendant, Donald R. Triplett, Jr., destroyed or
failed to keep such records from which his financial condition and business
transactions may be ascertained sufficient to deny him a discharge under 11
U.S.C. § 727(a)(3).

20. With respect to the allegedly undisclosed 2017 income tax return, the Court
concludes in applying the above standards to the evidence that Plaintiffs, Keith
Black and Jeremy Haltom, have each failed to sustain their burden and prove by a
preponderance of the evidence that Defendant, Donald R. Triplett, Jr. destroyed or
failed to keep such records from which his financial condition and business
transactions may be ascertained sufficient to deny him a discharge under 11
U.S.C. § 727(a)(3).

21. With respect to other allegedly undisclosed information referenced by Plaintiffs at
trial, if any, but not clearly included in the allegations of their respective Trial
Complaints nor in the Joint Pre-Trial Order(s),[185] for causes of action under 11
U.S.C. § 727(a)(3), the Court concludes in applying the above standards to the
evidence that Plaintiffs, Keith Black and Jeremy Haltom, have each failed to
sustain their burden and prove by a preponderance of the evidence that Defendant,
Donald R. Triplett, Jr., destroyed or failed to keep such records from which his
financial condition and business transactions may be ascertained sufficient to deny
him a discharge under 11 U.S.C. § 727(a)(3).

---

[185] *Id.*

## B.  11 U.S.C. § 727(a)(4)(A)

22.     Plaintiffs contend Defendant's discharge should be denied for making a false oath
        pursuant to 11 U.S.C. § 727(a)(4)(A).

23.     11 U.S.C. § 727(a)(4)(A) provides that:

        "(a) The court shall grant the debtor a discharge, unless —

               (4) the debtor knowingly and fraudulently, in or in connection with

               the  case—

               (A) made a false oath or account . . . ."

24.     As one court previously stated, "the bankruptcy schedules and statement of
        financial affairs of a debtor serve a vital role for creditors in a bankruptcy case, in
        that they ensure that adequate and truthful information is available to trustees and
        creditors, not just an objecting creditor, without the need for further investigation
        to determine whether or not the information is true and correct." *Mullen v. Jones
        (In re Jones)*, 2011 WL 479063, at *34 (Bankr. N.D. Tex., Feb. 3, 2011).

25.     An individual debtor may forfeit entitlement to a discharge by knowingly and
        fraudulently making a false oath.  "False oaths sufficient to justify denial of
        discharge include (1) a false statement or omission in the debtor's schedules or
        statement of financial affairs, or (2) a false statement by the debtor at an
        examination during the course of the bankruptcy proceedings." *Buckeye
        Retirement Co., LLC v. Bullough (In re Bullough)*, 358 B.R. 261, 280 (Bankr.
        N.D. Tex. 2007).

26.     To sustain their contention that Defendant's discharge should be denied for
        making a false oath pursuant to 11 U.S.C. § 727(a)(4)(A), Plaintiffs must establish
        the following elements: (1) the debtor made a statement under oath; (2) such
        statement was false; (3) the debtor knew the statement was false; (4) the debtor
        made the statement with fraudulent intent; and (5) the statement was materially
        related to the bankruptcy case.  *Cadle Co. v. Duncan (In re Duncan)*, 562 F.3d
        688, 695 (5th Cir. 2009); *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d
        174, 178 (5th Cir. 1992).  However, if a plaintiff establishes a prima facie case that
        a debtor made false statements, then the burden shifts to the debtor to present
        evidence that she is innocent of the charged offense.  *Cadle Co.*, 562 F.3d at 696.

27.    To justify the denial of a debtor's discharge under 11 U.S.C. § 727(a)(4)(A), a
       false oath may include: "(1) a false statement or omission in the debtor's
       schedules, or (2) a false statement by the debtor at the examination during the
       course of the proceedings." *Beaubouef*, 966 F.2d at 178.

28.    "[N]ot every misstatement or omission...constitutes a false oath.  Indeed, even
       multiple errors do not mandate the finding of a false oath without sufficient
       evidence of a fraudulent intent." *Buescher*, 491 B.R. at 432 (citing *Cadle Co. v.
       Pratt (In re Pratt)*, 411 F.3d 561 (5th Cir. 2005)).

29.    While fraudulent intent can be difficult to prove, a plaintiff may, in the alternative,
       utilize circumstantial evidence to demonstrate that a debtor made a false statement
       with reckless indifference to the truth. *Beaubouef*, 966 F.2d at 178.

30.    Plaintiffs contend Defendant made false statements under oath by allegedly: (1)
       failing to list his interest in DFW Design & Remodeling, Preferred Platinum
       Construction, and Copper Creek, (2) failing to list transfers from his bank accounts
       to DFW Design & Remodeling, Preferred Platinum Construction, and Copper
       Creek within a year of the petition date, (3) listing his spouse's monthly income as
       $1,125 when credit applications signed by his husband reflect greater monthly
       income, and (4) making numerous false statements or claims while under oath at
       his 341 meeting of creditors and in the 2004 Examination.[186]

31.    With respect to the statements under oath allegedly failing to list Defendant's
       interest, if any, in DFW Design & Remodeling, Preferred Platinum Construction,
       and Copper Creek, the Court concludes in applying the above standards to the
       evidence that Plaintiffs, Keith Black and Jeremy Haltom, have each failed to
       sustain their burden and prove by a preponderance of the evidence that Defendant,
       Donald R. Triplett, Jr., made a false statement under oath regarding such matters
       sufficient to deny him a discharge under 11 U.S.C. § 727(a)(4)(A).

32.    With respect to the statements under oath allegedly failing to list transfers from
       Defendant's bank accounts to DFW Design & Remodeling, Preferred Platinum
       Construction, and Copper Creek within a year of the petition date, if any, the
       Court concludes in applying the above standards to the evidence that Plaintiffs,
       Keith Black and Jeremy Haltom, have each failed to sustain their burden and

---

[186] Amend. Compl., *Black*, Adv. No. 20-4057, 13, ¶¶ 58-62, ECF No. 145; Amend. Compl., *Haltom*, Adv.
No. 20-4059, 13, ¶¶ 58-62, ECF No. 147.  *See also* Joint Pre-Trial Order, Adv. No. 20-4057, 7-9, ECF
No. 226; *Haltom*, Adv. No. 20-4059, 7-9, ECF No. 227.

prove by a preponderance of the evidence that Defendant, Donald R. Triplett, Jr., made a false statement under oath regarding such matters sufficient to deny him a discharge under 11 U.S.C. § 727(a)(4)(A).

33. With respect to the statements under oath reporting Mr. Escoffie's monthly salary in Debtor's schedules and/or SOFA alleged to be false by Plaintiffs, the Court concludes in applying the above standards to the evidence that Plaintiffs, Keith Black and Jeremy Haltom, have each failed to sustain their burden and prove by a preponderance of the evidence that Defendant, Donald R. Triplett, Jr., made a false statement under oath regarding such matters sufficient to deny him a discharge under 11 U.S.C. § 727(a)(4)(A).

34. With respect to false statements or claims allegedly made by Defendant while under oath at his § 341 meeting of creditors and in the 2004 Examination, the Court concludes in applying the above standards to the evidence that Plaintiffs, Keith Black and Jeremy Haltom, have each failed to sustain their burden and prove by a preponderance of the evidence that Defendant, Donald R. Triplett, Jr., made a false statement under oath regarding such matters sufficient to deny him a discharge under 11 U.S.C. § 727(a)(4)(A).

### C. 11 U.S.C. § 727(a)(6)(A)

35. 11 U.S.C. § 727(a)(6)(A) provides that:

"(a) The court shall grant the debtor a discharge, unless —

(6) the debtor has refused, in the case—

(A) to obey any lawful order of the court, other than an order to respond to a material question or to testify. . . ."

36. A debtor's refusal to comply must be willful and intentional. Furthermore, a court has wide discretion in its determination of whether a debtor has "refused" to obey a court order. *See Devers v. Bank of Sheridan, Montana (In re Devers)*, 759 F.2d 751, 755 (9th Cir. 1985).

37. A plaintiff must show that debtor violated a court order. *McKeithen Properties, LLC v. Meredith (In re Meredith)*, No. 04-1110, 2005 WL 5468745, at *6 (Bankr. M.D. La. Dec. 29, 2005), *aff'd*, 231 Fed. App'x. 321 (5th Cir. 2007). "A debtor forfeits his discharge for refusing to obey a court order only in cases of willful disobedience, and not merely for inadvertence or mistake." *Meredith*, 2004 WL 5468745, at *7 (citing *Friendly Financial Discount Corp. v. Jones (In re Jones)*, 490 F.2d 452, 456 (5th Cir. 1974)). Plaintiff must show that debtor actually

refused to obey a court order. *Id.* "Mere failure to obey an order is insufficient under § 727(a)(6)(A) . . ." *Id.*

38.   Plaintiffs contend Defendant failed to obey four (4) court orders in the underlying bankruptcy case.[187]  These are (1) the 2004 Order,[188] (2) the March 16, 2020 "Order Granting Creditors' Emergency Motion for Second Extension of Deadline for Filing Complaints Under 11 U.S.C. §§ 523 & 727",[189] (3) the "Order Granting Creditors' Motion to Compel Debtor to Complete 2004 Examination",[190] and (4) the "Order Granting in Part/Denying in Part Creditors' Motion to Compel Discovery and Request for Sanctions"[191] as later reconsidered.[192]

39.   With respect to the March 16, 2020 "Order Granting Creditors' Emergency Motion for Second Extension of Deadline for Filing Complaints Under 11 U.S.C. §§ 523 & 727",[193]  the Court concludes in applying the above standards to the evidence that Plaintiffs, Keith Black and Jeremy Haltom, have each failed to sustain their burden and prove by a preponderance of the evidence that Defendant, Donald R. Triplett, Jr., willfully refused to obey a lawful order of this Court sufficient to deny him a discharge under 11 U.S.C. § 727(a)(6)(A).

40.   With respect to the 2004 Order,[194] the Court concludes in applying the above standards to the evidence that Plaintiffs, Keith Black and Jeremy Haltom, have each failed to sustain their burden and prove by a preponderance of the evidence

---

[187] Amend. Compl., *Black*, Adv. No. 20-4057, 14, ¶¶ 63-67, ECF No. 145; Amend. Compl., *Haltom*, Adv. No. 20-4059, 14, ¶¶ 63-67, ECF No. 147.  *See also* Joint Pre-Trial Order, Adv. No. 20-4057, 1-7, ECF No. 226; *Haltom*, Adv. No. 20-4059, 1-7, ECF No. 227.

[188] *In re Triplett*, No. 19-42570, ECF No. 99;  *see also* Ex. 8.

[189]  *In re Triplett*, No. 19-42570, ECF No. 113; *see also* Ex. 16.

[190] *In re Triplett*, No. 19-42570, ECF No. 152;  *see also* Ex. 20.

[191] *In re Triplett*, No. 19-42570, ECF No. 196.

[192] *In re Triplett*, No. 19-42570, ECF No. 208;  Ex. 33.

[193]  *In re Triplett*, No. 19-42570, ECF No. 113; *see also* Ex. 16.

[194] *In re Triplett*, No. 19-42570, ECF No. 99;  *see also* Ex. 8.

that Defendant, Donald R. Triplett, Jr., willfully refused to obey a lawful order of this Court sufficient to deny him a discharge under 11 U.S.C. § 727(a)(6)(A).

41.   With respect to the "Order Granting Creditors' Motion to Compel Debtor to Complete 2004 Examination,"[195] the Court concludes in applying the above standards to the evidence that Plaintiffs, Keith Black and Jeremy Haltom, have each failed to sustain their burden and prove by a preponderance of the evidence that Defendant, Donald R. Triplett, Jr., willfully refused to obey a lawful order of this Court sufficient to deny him a discharge under 11 U.S.C. § 727(a)(6)(A).

42.   With respect to the "Order Granting in Part/Denying in Part Creditors' Motion to Compel Discovery and Request for Sanctions"[196] including as later reconsidered,[197] the Court concludes in applying the above standards to the evidence that Plaintiffs, Keith Black and Jeremy Haltom, have each failed to sustain their burden and prove by a preponderance of the evidence that Defendant, Donald R. Triplett, Jr., willfully refused to obey a lawful order of this Court sufficient to deny him a discharge under 11 U.S.C. § 727(a)(6)(A).

### V. Sanctions Motions

43.   Defendant and Plaintiffs have filed, respectively, the Sanctions Motions against one another.[198]

44.   Defendant's Sanctions Motions were filed first and seek sanctions "through a combination of Fed. R. Bankr. P. 9011 (which roughly mirrors Fed. R. Civ. P. 11); Fed. R. Bankr. P. 7037 (which makes applicable to adversary proceedings Fed. R. Civ. P. 37); and 11 U.S.C. § 105 (which gives this Court wide authority to 'issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [Title 11]')."[199]

---

[195] *In re Triplett*, No. 19-42570, ECF No. 152;  *see also* Ex. 20.

[196] *In re Triplett*, No. 19-42570, ECF No. 196.

[197] *In re Triplett*, No. 19-42570, ECF No. 208;  Ex. 33.

[198] *See supra,* Pg. 2.

[199] *Black*, Adv. No. 20-4057, 65, ¶ 193, ECF No. 141; *Haltom*, Adv. No. 20-4059, 65, ¶ 193, ECF No. 143.

45.   More specifically, Defendant urges this Court in the Sanctions Motions "to
      sanction the Plaintiff[s], the Valks and/or their counsel with the most serious
      sanction available – up to and including death penalty sanctions."[200]  Reasons
      given for this request include:

      a.   " . . . [i]mproper use of discovery."[201]

      b.   " . . . the entirely improper and inappropriate use of the court system and of
           the criminal justice system to try to bend these institutions to their will."[202]

      c.   " . . . none of these suits have anything to do with the allegations therein or
           with the manufactured harm alleged. They have everything to do with
           exacting revenge. They have everything to do with forcing Debtor to spend
           large amounts of money that Plaintiff and the Valks know Debtor doesn't
           have. They have everything to do with preventing Debtor from asserting
           claims against them that he legitimately had and still has."[203]

46.   Most of the allegations made by Plaintiffs in their Sanctions Motions involve
      either pre-petition conduct, or events which occurred in litigation pending outside
      this Court.

47.   "The imposition of sanctions against an attorney is often guided by Bankruptcy
      Rule 9011."  *In re TRED Holdings, L.P.*, No. 10-40749, 2010 Bankr. LEXIS 3109,
      at *25 (Bankr. E.D. Tex. 2010); *see also In re Lopez*, Nos. 21-10343, 21-10098,
      21-10246, 2022 Bankr. LEXIS 1619, at *10 (Bankr. E.D. Tex. 2022).

---

[200] *Black*, Adv. No. 20-4057, 67, ¶ 201, ECF No. 141; *Haltom*, Adv. No. 20-4059, 67, ¶ 201, ECF No.
143.

[201] *Black*, Adv. No. 20-4057, 67, ¶ 203, ECF No. 141; *Haltom*, Adv. No. 20-4059, 67, ¶ 203, ECF No.
143.

[202] *Black*, Adv. No. 20-4057, 67, ¶ 204, ECF No. 141; *Haltom*, Adv. No. 20-4059, 67, ¶ 204, ECF No.
143.

[203] *Black*, Adv. No. 20-4057, 67, ¶ 205, ECF No. 141; *Haltom*, Adv. No. 20-4059, 67, ¶ 205, ECF No.
143.

48.     Sanctions under Rule 9011 are limited to remedying filing abuses occurring within the judicial system. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 385 (1990).  Furthermore, there is no indication in the language of Rule 9011 that it applies to filings in any court other than a bankruptcy court.  S*ee Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 245 (5th Cir. 1998). Thus, Rule 9011 cannot apply to state court filings or misconduct prior to the commencement of the bankruptcy case. *Id.*

49.     "Rule 11 does not authorize a federal court to sanction a party for signing and filing a complaint in state court prior to removal." *Rice v. Natl. Bev. Corp.*, No. 18 CV 7151, 2019 WL 3037094 at 3 (N.D. Ill. July 11, 2019).

50.     "The Court also has authority to impose sanctions against [counsel] under 28 U.S.C. § 1927, which states:

>        Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The Fifth Circuit has interpreted the requirement that an attorney's conduct must be vexatious and unreasonable as requiring evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court. *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1998)." *See In re TRED Holdings, L.P.*, No. 10-40749, 2010 Bankr. LEXIS 3109, at *25-26 (Bankr. E.D. Tex. 2010)

51.     "By its terms, § 1927 permits the district court to award attorneys' fees as a sanction against an attorney who unreasonably and vexatiously 'multiplies the proceedings in any case.'  It applies, therefore, to misconduct by an attorney in the course of 'proceedings' in a 'case' before the court, not misconduct that occurs before the case appears on the federal court's docket.  That is, the statute provides a discretionary sanction against attorneys who abuse the judicial process, not those who engage in improper conduct in the runup to litigation.'" *Bender v. Freed*, 436 F.3d 747, 751 (7th Cir. 2006).

52. Plaintiffs' Sanctions Motions were filed later and in response to Defendant's Sanctions Motions.[204]  They seek "an order striking the unfounded, irrelevant, and borderline defamatory allegations made by the [D]ebtor, Donald R. Triplett, Jr. [] in his Motion for Sanctions [] (the "Death Penalty Sanction Motion") and imposing sanctions under Rule 11, 28 U.S.C. § 1927, and the Court's inherent power to sanction bad faith conduct for attempting to misuse the court system and obtain a litigation advantage through the use of the Death Penalty Sanction Motion."[205]  More specifically, Plaintiffs ask for "an order (i) striking the Death Penalty Sanctions Motion in its entirety; (ii) imposing monetary sanctions against the Defendant and/or its attorney as deemed appropriate; (iii) awarding Plaintiff his attorney's fees in bringing and litigating this Motion; (iv) enjoining the Defendant from making the same or similar unrelated and immaterial allegations in future documents filed with this Court in this adversary proceeding; and (v) granting such other and further relief to which Plaintiff may be entitled at law or equity."[206]

53. "A claim is moot when a case or controversy no longer exists between the parties." *Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 345 (5th Cir. 2017).

54. Mootness "can arise in one of two ways: First, a controversy can become moot when the issues presented are no longer live. A controversy can also become moot when the parties lack a legally cognizable interest in the outcome." *Chevron U.S.A. v. Traillour Oil Co.*, 987 F.2d 1138, 1153 (5th Cir. 1993).

55. One court recently described mootness as follows:

> "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982). The doctrine of voluntary cessation evaluates the risk that a defendant is engaging in "litigation

---

[204] *See supra,* Pg. 2.

[205] *Black*, Adv. No. 20-4057, 2, ECF No. 189; *Haltom*, Adv. No. 20-4059, 2, ECF No. 190.

[206] *Black*, Adv. No. 20-4057, 19, ECF No. 189; *Haltom*, Adv. No. 20-4059, 19, ECF No. 190.

posturing" to avoid judicial review. *See Yarls v. Bunton*, 905 F.3d 905, 910 (5th Cir. 2018); *Aladdin's Castle*, 455 U.S. at 289 n.10, 102 S.Ct. 1070. Thus, when a defendant's voluntary cessation moots a plaintiff's claim, the defendant bears the "heavy burden" to make it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs., Inc.*, 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). "A controversy may remain to be settled in such circumstances," namely "a dispute over the legality of the challenged practices." *United States v. W. T. Grant Co.*, 345 U.S. 629, 631, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). Because "[t]he defendant is free to return to his old ways" once the litigation is ended, public interest weighs in favor of "having the legality of the practices settled."

*See Sambrano v. United Airlines, Inc.*, No. 4:21-CV-1074-P, 2023 WL 8721437, at *17 (N.D. Tex. Dec. 18, 2023), reconsideration denied, No. 4:21-CV-1074-P, 2024 WL 3085144 (N.D. Tex. June 21, 2024).

56.     Because Plaintiffs have failed to prove their allegations, and Defendant, Donald R. Triplett, Jr., is entitled to a discharge under 11 U.S.C. § 727, this Court finds that Defendant's Sanctions Motions against Plaintiffs are moot.  Defendant's Sanctions Motions complain mostly of conduct which occurred outside this Court and which as a result this Court may not remedy under the scope of Rule 9011.  For remaining conduct which allegedly occurred in these adversary proceedings, little purpose will be served by conducting a trial on the merits of Defendant's Sanctions Motions.  Defendant will receive a discharge, and so remaining issues, if any, are not live, and Defendant lacks any cognizable interest in the further outcome of his Sanctions Motions pending in these adversary proceedings.

57.     Furthermore, this is not a situation where Plaintiffs, in response to Defendant's Sanctions Motions, have *voluntarily* ceased the activities in these proceedings of which Defendant complains and later claimed mootness.  Rather, this Court, in granting Defendant a discharge over Plaintiffs' objections, is *involuntarily* entering an order the effect of which will be to moot the Defendant's Sanctions Motions and require any activities which are within the scope of a discharge under 11 U.S.C. § 727 to cease.  But for entry of this discharge order, there is no question Plaintiffs would continue to litigate against Defendant in any and every available forum.

58.　　Because the behavior of Defendant and/or his counsel which Plaintiffs' Sanctions
Motions complains of directly relates to Defendant's filing of his own Sanctions
Motion, if the Defendant's Sanctions Motions are dismissed as moot, then so too
should be the Plaintiffs' Sanctions Motions.  In the absence of Defendant's
Sanctions Motions, the Plaintiffs' Sanctions Motions are unnecessary and
superfluous.

59.　　Therefore, because Defendant's Sanctions Motions are dismissed as moot, so too
and for the same reasons are Plaintiffs' Sanctions Motions.

## CONCLUSION

1.　　The Court concludes that Plaintiffs, Keith Black and Jeremy Haltom, have each
failed in their respective adversary proceedings to prove by a preponderance of the
evidence that Defendant, Donald R. Triplett, Jr., should be denied a discharge
under 11 U.S.C. § 727(a)(3) for destroying or failing to keep records from which
his financial condition may be ascertained.  Therefore, judgment must be rendered
for the Defendant under § 727(a)(3).

2.　　The Court concludes that Plaintiffs, Keith Black and Jeremy Haltom, have each
failed in their respective adversary proceedings to prove by a preponderance of the
evidence that Defendant, Donald R. Triplett, Jr., should be denied a discharge
under 11 U.S.C. § 727(a)(4)(A) for making a false oath.  Therefore, judgment
must be rendered for the Defendant under § 727(a)(4)(A).

3.　　The Court concludes that Plaintiffs, Keith Black and Jeremy Haltom, have each
failed in their respective adversary proceedings to prove by a preponderance of the
evidence that Defendant, Donald R. Triplett, Jr., should be denied a discharge
under 11 U.S.C. § 727(a)(6)(A) for refusal to obey any lawful order of the court.
Therefore, judgment must be rendered for the Defendant under § 727(a)(6)(A).

4.　　Thus, all relief requested by Plaintiffs in the Trial Complaints in the above-
referenced adversary proceedings shall be DENIED.

5.　　Because of the denial of Plaintiffs' respective causes of action in their entirety,
Defendant, Donald R. Triplett, Jr., is entitled to and shall be granted by this Court
a discharge under 11 U.S.C. § 727.

6.    Furthermore, because Defendant, Donald R. Triplett, Jr., will be granted a discharge under 11 U.S.C. § 727, and for the reasons set forth more fully above, the Court finds the Sanctions Motions are MOOT and should be DISMISSED without prejudice.

7.    As a final note, the Court acknowledges that this has been a long, bitter, and acrimonious legal battle between Plaintiffs and Defendant.  The Court does not doubt the frustration of the parties with each other.  However, such frustration cannot obviate the degree of proper proof required, especially considering the gravity of the relief Plaintiffs seek.

8.    To the extent any of these conclusions of law constitute findings of fact, the Court expressly adopts them as such.

9.    An appropriate judgment shall be entered consistent with these findings and conclusions.

Signed on 9/4/24

THE HONORABLE JOSHUA P. SEARCY
UNITED STATES BANKRUPTCY JUDGE